

SCANNED



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

KOH

| Timothy F. Hagan, Jr. | Mailing Address: | Office Location: | DIRECT: 301-344-8134 |
| Assistant United States Attorney | 6500 Cherrywood Lane, Suite 200 | 6406 Ivy Lane, 8th Floor | MAIN: 301-344-4433 |
| Timothy.Hagan@usdoj.gov | Greenbelt, MD 20770-1249 | Greenbelt, MD 20770-1249 | FAX: 301-344-4516 |

USDC - GREENBELT
22 FEB 28 PM 3:44

April 2, 2020

Amy Fitzgibbons, Esq.
Federal Public Defender's Office
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770

Re:   United States v. Patrick Lawrence Wood,
      Criminal No. GJH-18-0429

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Patrick Lawrence Wood (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **This agreement will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(l)(C).** If this offer has not been accepted by **5 p.m.** on **April 24, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. § 2251(e). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant: (1) conspired to employ, use, persuade, induce, entice or coerce the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; (2) at the time, the victim was a minor; and (3) either: (a) that the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means; or (b) that the visual depiction was mailed or actually transported or transmitted across state lines or in foreign commerce.

Rev. August 2018

Penalties

3.   The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(e) | 15 years | 30 years | At least 5 years up to life | $250,000 | $100 and $5,000 |

   a.   Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b.   Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c.   Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and 2259.

   d.   Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e.   Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f.   Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

        5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

        6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

        a.     This Office and the Defendant further agree that the applicable base offense level is **32**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2X1.1(a) and 2G2.1(a).

        b.     The offense level is increased by **4** levels, pursuant to U.S.S.G. § 2G2.1(b)(1), because the offense involved a minor who had not yet attained the age of twelve years.

        c.     The offense level is increased by **2** levels, pursuant to U.S.S.G. § 2G2.1(b)(3), because the Defendant knowing engaged in distribution in that he knowingly counseled, commanded, induced, procured, or willfully caused the distribution.

        d.     The offense level is increased by **2** levels, pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(ii), because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct.

e.  The offense level is increased by **5** levels, pursuant to U.S.S.G. §§ 2G2.1(d)(1) and 3D1.4(a), because the offense involved the exploitation of more than 5 minor victims.

f.  This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.  Pursuant to U.S.S.G. § 4B1.5(b)(1), **5** levels are added to the offense level determined under Chapters Two and Three because: the Defendant's offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of § 4B1.5 of the guidelines apply, and the Defendant engaged in a pattern of activity involving prohibited sexual conduct. Pursuant to U.S.S.G. § 5G1.1(a), because of the statutorily authorized maximum sentence (30 years) is less than the minimum of the applicable guideline range (life), the guideline sentence is **30 years**.

8.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

10.  The parties stipulate and agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the imposition of a sentence of imprisonment within the range of **not less than 204 months and not more than 276 months** is the appropriate disposition of this case. The parties further agree that a sentence within the range of **not less than 204 months and not more than 276 months** of imprisonment is the appropriate and reasonable sentence under the factors enumerated in 18 U.S.C. § 3553(a), regardless of the applicable U.S.S.G. calculations.

11. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). However, the parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentencing range contained in this Agreement and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

12. At the time of sentencing, this Office and the Defendant agree to request a sentence within the range of **204 months (17 years) and 276 months (23 years) of imprisonment**. This Office and the Defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

    b. If the Court imposes a sentence within the agreed-upon range, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

14. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

15. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following devices seized from the Defendant's residence on July 27, 2018: (1) a Toshiba Satellite A105 laptop bearing serial number 16138400Q; (2) a black eMachines T3025 desktop computer bearing serial number CA13BB0013080; (3) a Samsung GSM SM-S550TL Galaxy On5 cellular telephone bearing IMEI number 359578070858644; (4) a Samsung SM-N920P cellular telephone bearing MEID number 256691584007440516; (5) a Samsung SM-T217S tablet device bearing IMEI number 990004451681336; and (6) a Samsung SPH-P100 tablet device bearing MEID number 268435460202180486.

16. The Defendant further agrees to forfeit any visual depiction described in Title 18, U.S.C. § 2252A, or any book, magazine, periodical, film, videotape, electronic media, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110.

17. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

18. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

19. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

20.    The Defendant agrees to the entry of a restitution order for the full amount of the victim's losses for all victims of the conduct described in the factual stipulation. The Defendant stipulates and agrees that all minors depicted in child pornography that the Defendant conspired to produce, or possessed on electronic devices and storage media seized from his residence are victims to whom restitution should be paid. The Defendant agrees that, pursuant to 18 U.S.C. §§ 2259, 3663A, 3664, and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Sex Offender Registration and Additional Special Assessment

21.    The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

22.    The Defendant must also pay an additional special assessment of $5,000, unless the Defendant is indigent, pursuant to 18 U.S.C. § 3014.

## Defendant's Conduct Prior to Sentencing and Breach

23.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

24.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may

make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Entire Agreement

25. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

*[signature]*

Timothy F. Hagan, Jr.
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2-23-2022
Date

*Patrick Lawrence Wood*
Patrick Lawrence Wood

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

2/23/2022
Date

Amy Fitzgibbons, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On or about July 22, 2018, Facebook, Inc. ("Facebook") sent two Cybertipline Reports to the National Center for Missing and Exploited Children ("NCMEC") to advise that Facebook had identified a Facebook user who had requested, and subsequently paid, another Facebook user to create sexually explicit images of a prepubescent male and female and send them via the Facebook private message function. The information Facebook sent to NCMEC advised that the Facebook account of "Patrick Wood," based in the United States, was used to entice another Facebook user, based in the Philippines, to create sexually explicit images of a prepubescent male and female and send them to the Facebook account "Patrick Wood" via private messages. In addition, Facebook provided internet protocol (IP) addresses associated with the private messages sent from the Facebook account of "Patrick Wood" as well as an email address that was used in the registration of the "Patrick Wood" account. Facebook provided NCMEC a copy of the images that had been sent to the Facebook account of "Patrick Wood" via private message.

Investigators with Homeland Security Investigations ("HSI") identified the "Patrick Wood" Facebook account to belong to the Defendant, **PATRICK LAWRENCE WOOD** (**"WOOD"**). A search warrant was obtained for **WOOD**'s residence in Silver Spring, Maryland, which was executed on July 27, 2018 by law enforcement including HSI, Montgomery County Police, and Maryland State Police. **WOOD** was present in the residence at the time of the execution of the search warrant, advised that he was not under arrest, was free to go, and did not have to answer questions. **WOOD** elected to speak with investigators. During this interview, **WOOD** admitted to using Facebook to solicit the production of child pornography. **WOOD** also admitted to using PayPal, Western Union, Xoom, and other means to send payment to individuals in the Philippines and United States in exchange for their sending images and videos of child pornography. Mr. Wood was cooperative with law enforcement and provided his email account addresses, information related to social media accounts and money transfer companies. He told law enforcement that he was "happy that you all caught me."

Law enforcement identified two Facebook accounts belonging to **WOOD**, one associated with **WOOD**'s email account "wood14225@gmail.com," another associated with **WOOD**'s email account "pat2004wood@yahoo.com." **WOOD** also used the email address "wood14225@gmail.com" to access his Google Drive account, which is a cloud-based storage account. Search warrants were obtained for the content of **WOOD**'s social media accounts. A search of those accounts and devices seized from **WOOD**'s residence revealed that **WOOD** communicated with three coconspirators in the Philippines to procure images and videos of minors engaged in sexual conduct. These communications occurred over various digital platforms, including Facebook private messenger, Google Hangouts, and Kik. **WOOD** routinely paid coconspirators for access to videos and images of minors engaged in sexually explicit conduct.

The videos were sometimes produced via live feeds and involved a child engaged in the specific sexual conduct requested by and paid for (through a coconspirator adult intermediary) by **WOOD**.

The investigation revealed that **WOOD** sent:

- U.S. currency amounting to approximately $122,703.65 PHP (approximately $2500 in U.S. currency as of the last date sent) in Philippine pesos via Paypal, a digital money transfer service, to coconspirators in the Philippines in furtherance of this activity in the three years prior to his arrest.
- approximately $34,746.45 in U.S. currency via Remitly, a digital money transfer serves enabling overseas transfers, to individuals in the Philippines including coconspirators in the four years prior to his arrest.
- approximately $2,104.56 in U.S. currency online via Western Union, a money transfer service, in exchange for images and videos of children engaged in sexual conduct during the four years prior to his arrest.
- approximately $1,500 in U.S. currency via Xoom, a digital money transfer service, to conconspirators in the Philippines from 2016-2018.

Images and videos of at least five minor male and female victims under the age of 12 engaging in sexual conduct were electronically sent during online chat sessions from coconspirators in the Philippines to **WOOD**, at **WOOD**'s request, and in exchange for monies paid by **WOOD**. For example, on July 18, 2018 between 14:15:58 UTC and 14:21:13 EST, **WOOD** used the "Patrick Wood" Facebook account to communicate the following with a coconspirator in the Philippines:

| | |
|---|---|
| Coconspirator: | You sent |
| **WOOD**: | Send me video of him playing with his dick or her playing with pussy |
| Coconspirator: | The baby boy I can wake up and playing his dick I sent you the video |
| Coconspirator: | This image was uploaded |
| Coconspirator: | I sent the video |
| Coconspirator: | So sent now 1000 php |
| Coconspirator: | pkianjeff@yahoo.com |

During this communication, the automatically-generated "This image was uploaded," attributed to the Coconspirator, refers to a 34 second video file that was successfully uploaded onto the chat by the Coconspirator for **WOOD** to view. This video file depicts a partially nude prepubescent minor male whose genitals are exposed in the video manipulating his genitals with his hands. His pants and underwear are pulled down in the video and his underwear which is red in color is visible in the video. The minor also simulates masturbating in the video.

Additionally, images and videos of at least 8 minor male victims engaged in sexual conduct or featuring lascivious display of the victims' genitals were electronically sent from locations in the United States during online chat sessions to **WOOD** at **WOOD**'s request. At least one of the domestic minor victims was also paid in the form of gift cards and new clothing by **WOOD** for

producing images lasciviously displaying the male victim's genitals at **WOOD**'s request. The minors depicted in these images were between the ages of 14-17 years old.

In addition to the images and videos of child pornography identified on **WOOD**'s social media and cloud-based storage accounts, the forensic examination of the devices seized from **WOOD**'s home revealed over 150 images and 5 videos of child pornography on **WOOD**'s: (1) Toshiba Satellite A105 laptop bearing serial number 16138400Q; (2) black eMachines T3025 desktop computer bearing serial number CA13BB0013080; (3) Samsung GSM SM-S550TL Galaxy On5 cellular telephone bearing IMEI number 359578070858644; (4) Samsung SM-N920P cellular telephone bearing MEID number 256691584007440516; (5) Samsung SM-T217S tablet device bearing IMEI number 990004451681336; and (6) Samsung SPH-P100 tablet device bearing MEID number 268435460202180486. The forensic analysis of these devices also revealed saved screenshots of a paid flight ticket confirmation for **WOOD** to travel to Manila, Philippines, staying from approximately March 26, 2018 to April 10, 2018, though investigators later confirmed that **WOOD** did not ultimately travel there during this time period and cancelled the ticket.

SO STIPULATED:

_____
Timothy F. Hagan, Jr.
Assistant United States Attorney

_____
Patrick Lawrence Wood
Defendant

_____
Amy Fitzgibbons, Esq.
Counsel for Defendant